UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERRIE L. MICHNO,

                    Plaintiff,           07-CV-0381

        v.                                 **DECISION**
                                                        **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant.

_____

## Introduction

Plaintiff Sherrie L. Michno ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") William T. Vest, Jr., as affirmed by the Social Security Appeals Council ("Council"), denying her application for benefits was against the weight of substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on grounds that the ALJ's

---

[1]This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated September 28, 2009.

decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. Plaintiff cross-moves for judgment on the pleadings pursuant to Rule 12(c), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's cross-motion for judgment on the pleadings.

## **Background**

On August 16, 2004, Plaintiff, who was then 38 years old, filed an application for Disability Insurance Benefits under Title II, §§ 216(i) and 223 of the Social Security Act ("the Act") and for SSI under § 1614(a)(3)(A) of the Act. Plaintiff claimed a disability since July 17, 2004, due to multiple sclerosis and depression. (Transcript of the Administrative Proceedings at pages 50, 62) (hereinafter "Tr."). Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on December 15, 2004. (Tr. at 46). Plaintiff filed a timely request for hearing on February 1, 2005. (Tr. at 42).

Thereafter, Plaintiff appeared via video conference, with counsel, at an administrative hearing before ALJ William T. Vest, Jr. on July 25, 2006. (Tr. at 280). In a decision dated August 18,

2006, the ALJ determined that Plaintiff was not entitled to disability benefits and was not eligible for SSI benefits. (Tr. at 15, 16). Plaintiff filed a timely request for a review of the hearing decision on September 8, 2006. (Tr. at 12). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on April 27, 2007. (Tr. at 5). On June 14, 2007, Plaintiff filed this action.

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the

legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

**II. <u>The Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence in the record</u>**

**A. <u>The ALJ properly applied the five-step analysis to conclude that Plaintiff was not disabled under the Act.</u>**

The Act defines disability as "physical or mental impairment or impairments [. . .] of such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 223(d)(2) and 1614(a)(3). In this case, the ALJ found Plaintiff was not under a disability within the meaning of the Act during the period of July 17, 2004 through August 18, 2006. (Tr. at 15-16).

In reaching his conclusion, the ALJ adhered to the Administration's five-step sequential analysis for evaluating applications for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920.[2] Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (Tr. at page 17).

At Step 2, the ALJ found that Plaintiff suffered from the severe impairment of multiple sclerosis and the non-severe impairments of adjustment disorder, status post cerebrovascular accident (noted in transcript as "s/p CVA"), seizure disorder and cervical disc disease. (Tr. at 18-19).

At Step 3 of the 5-step analysis, the ALJ concluded that Plaintiff's severe impairment did not meet or medically equal in severity the criteria for multiple sclerosis listed in § 11.09 of 20 CFR 404, Subpart P, Appendix 1. (Hereinafter "the Listings"). (Tr. at 17-19). In reaching this conclusion, the ALJ found "no

---

[2]Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

evidence of disorganization of motor function, visual impairment, mental impairment or fatigue of motor function with the severity required" by the Listings. (Tr. at 19). The ALJ went on to state that Plaintiff had mild weakness but normal gait, average cognitive functioning and no significant visual deficits. (Tr. 19). In addition, the ALJ found that Plaintiff's non-severe impairments did not meet or medically equal the criteria for any impairments in the Listings. (Tr. at 20).

Further, at Step 4, the ALJ found Plaintiff unable to perform her past relevant work as a certified nurse's assistant and as a licensed practical nurse. (Tr. at 21). The ALJ also found Plaintiff's residual functional capacity ("RFC") to include the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8 hour work day, sit for 8 hours in an 8 hour work day. Plaintiff's RFC restricts her from climbing or working around unprotected heights, dangerous machinery, or exposure to excessive vibration. (Tr. at 20).

Finally, at Step 5, the ALJ found that considering Plaintiff's age, education, work experience and RFC, jobs exist in the local and national economy which Plaintiff could perform. (Tr. at 22, 23). Specifically, the ALJ found that Plaintiff could perform non-production job duties of laundry sorter, photo copy machine operator, information clerk and calculations machine operator.

(Tr. at 22, 23). The ALJ found Plaintiff capable of making a successful adjustment to other work that exists in significant numbers in the local and national economies. (Id.) In reaching this finding, the ALJ relied on the testimony of the vocational expert. (Tr. at 22).

The ALJ properly applied the five-step analysis. Therefore, I find that the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Act.

### B. The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff contends that her multiple sclerosis is disabling in spite of the absence of objective medical evidence to support her subjective complaints. (Plaintiff's brief at 7). In addition, Plaintiff argues that the ALJ failed to properly consider Plaintiff's work record in finding that Plaintiff's testimony regarding her fatigue and other symptoms not entirely credible. (Plaintiff's brief at 14).

The ALJ must consider Plaintiff's statements about the effects of her symptoms, such as fatigue, on her activities of daily living and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, the ALJ must also consider whether the medical evidence shows that Plaintiff's medical impairments could reasonably be expected to produce Plaintiff's stated symptoms. Id. The ALJ must then determine the intensity and persistence of Plaintiff's symptoms and its effect on her capacity for work activities in light of all the available

evidence, including objective medical evidence, opinion evidence, and other evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ may not reject Plaintiff's statements about the intensity of her symptoms based on his consideration of the objective medical evidence alone. Id. The ALJ should consider other evidence including prior work record, claimant's statements about her symptoms, symptoms reported by treating physicians and others, and personal observations. Id. Relevant factors to consider include daily activities, duration, frequency and intensity of symptoms, aggravating factors, side effects from medication, treatments used and any other relevant factors. Id.

The ALJ must give specific reasons for a credibility finding. SSR 96-7p. However, the Second Circuit does not require the ALJ to "mention every item of testimony" in his decision or explain his consideration of particular evidence. Monguer v. Heckler, 722 F.2d 1033, 1040 (2d. Cir. 1983).

Here, after reviewing the objective medical evidence, opinion evidence and other evidence, the ALJ properly found "not entirely credible" Plaintiff's statements about the limiting effects of her "chronic muscle weakness, fatigue, a depressed mood and feelings of anxiety." (Tr. at 20). Specifically, the ALJ considered the objective medical evidence and opinion evidence from examinations conducted by treating physician Dr. Stephan, treating neurologist Dr. Patel, consultative neurologist Dr. Jaffri, consultative

psychologist Dr. Dickinson, the DSS disability consultant and Plaintiff's testimony. (Tr. at 18-22). However, the ALJ did not discuss Plaintiff's work history in his decision, although he noted Plaintiff's work history and questioned Plaintiff about it. (Tr. at 21, 284, 290).

In making his determination, the ALJ considered Dr. Stephan's examination of Plaintiff on Sept. 23, 2004, shortly after Plaintiff was diagnosed with multiple sclerosis. (Tr. at 22, 146). Dr. Stephan found Plaintiff had generalized muscle weakness and numbness on the left side and reported Plaintiff complained of anxiety, depression, insomnia, stress and fatigue. Id.

The ALJ also considered the reports of treating neurologist Dr. Malti Patel in making his determination regarding the Plaintiff's limitations. (Tr. at 18, 21). On July 16, 2004, Dr. Patel reported Plaintiff's complaints of "mood swings, vertigo and episodes of forgetfulness, decrease in hearing, fatigue . . . urinary incontinence . . . occasional imbalance and poor sleeping pattern." (Tr. at 193). On July 28, 2004, Dr. Patel reported Plaintiff was self-ambulatory and her complaints of "frequent falling with her leg tending to give out, urinary incontinence, and generalized fatigue," and occasional leg numbness. (Tr. at 191). On Nov. 18, 2004, Dr. Patel reported Plaintiff's complaint of significant fatigue and excessive hair loss. (Tr. at 187). Dr. Patel found Plaintiff's limb strength in all muscle groups was 5/5, showed

"very, very mild spasticity" in arms and legs, tested negative for poor balance, was able to hop on one foot and straight-line walk, and exhibited no decrease in sensory function. Id. Dr. Patel gave Plaintiff an EDSS score of about three but noted that most of Plaintiff's deficits were in subjective categories.[3] Id.

In a follow-up examination with Dr. Patel dated January 27, 2006, Plaintiff complained of difficulty getting up from a seated position. (Tr. at 265). However, Dr. Patel found "strength in the upper extremities was good throughout and only equivocally decreased strength in the lower extremities" and recommended an MRI. Id. On Mar. 30, 2006, Plaintiff reported insomnia which was treated with medication. (Tr. at 264). On May 12, 2006, Plaintiff reported that medication gave her more than adequate sleep and Dr. Patel stated Plaintiff was "doing well" with the exception of site pain from Copaxone injections. (Tr. at 268).

The ALJ also considered and gave greater weight to the report of consultative neurologist Dr. Jaffri. (Tr. at 22). On November 2, 2004, Dr. Jaffri reported Plaintiff's complaints of severe fatigue from the multiple sclerosis treatment, generalized muscle weakness, left side numbness, leg cramps, difficulty standing or walking for long periods. (Tr. at 176). Plaintiff also reported to Dr. Jaffri

---

[3]EDSS refers to the Kurtzke Expanded Disability Status Scale which quantifies multiple sclerosis disability in eight functional systems. A score of 3 means the patient is fully ambulatory and has a moderate disability in one functional system or a mild disability in three of four functional systems. *National Multiple Sclerosis Society*, retrieved online on October 19, 2009, http://www.nationalmssociety.org.

that she stayed in bed most of the time, her mother helped her with household chores, but she cooked 4 times per week for herself, cleaned and did laundry once per week, showered, bathed and dressed every other day "depending on the day", watched TV and socialized with friends. Id. Dr. Jaffri found Plaintiff tested negative for poor balance and was able to walk normally but was off balance when tandem walking heel to toe, and was alert and oriented to time, person, and place with no impairment in insight or judgment. (Tr. at 177). Dr. Jaffri found Plaintiff had strength of 5/5 in hand grip, upper and lower extremities, with no muscle atrophy, and a full range of motion. (Tr. at 178). Although Patient complained of numbness in the lower left side, Dr. Jaffri found normal sensation to pain, light touch, proprioception or orientation of body in space, and vibration. Id.

The ALJ also considered the "Physical RFC Assessment" of the DSS medical consultant dated November 30, 2004. (Tr. at 22). The DSS consultant found Plaintiff limited to occasionally lifting and/or carrying 50 lbs., frequently lifting and/or carrying 25 lbs., able to stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours, with no limitations on the ability to push and/or pull. (Tr. at 200). The consultant found no postural, manipulative, visual, and communicative limitations. Id. However, the consultant noted that Plaintiff should avoid vibration and hazards in the workplace environment. (Tr. at 202).

The ALJ found the consultant's assessment was "somewhat consistent with the objective medical evidence." (Tr. at 21). The ALJ went on to state that in making his determination, he gave "the benefit of every doubt" to Plaintiff regarding the effects of her multiple sclerosis and "moderate" weight to the consultant's findings about the severity of Plaintiff's limitations. Id.

Finally, the ALJ considered Plaintiff's testimony. (Tr. at 21, 22). At the hearing, Plaintiff stated she went to a friend's house once a week, shopped for food or other needed items, could carry 20 pounds, had difficulty walking due to muscle spasms and numbness but could walk around the block on a "good day", suffered from muscle spasms when seated, could cook but did no housekeeping or yard work, watched TV for 3 or 4 hours a day, and listened to the radio. (Tr. at 288). Plaintiff also stated that she experienced fatigue as a side effect from her medications, and required medication to help her sleep. (Tr. at 290). During examination of Plaintiff by her attorney, Plaintiff stated that she has about four bad days per week in which she stays in bed except to eat and use the bathroom. (Tr. at 290).

In making the RFC finding, the ALJ considered the medical evidence from Dr. Stephan, Dr. Patel, Dr. Jaffri, and the DSS examiner as well as Plaintiff's testimony about her daily activities in determining the intensity, persistence and effects of Plaintiff's symptoms. (Tr. at 21, 22). Although the ALJ did not discuss

Plaintiff's work history in determining the credibility of Plaintiff's subjective complaints, the ALJ's decision clearly stated the evidentiary basis for his rationale. Id.

I find that substantial objective medical evidence and other evidence exists in the record which supports the ALJ's findings. Therefore, I find the ALJ properly determined the record does not support the degree of limitation alleged by Plaintiff resulting from her severe impairment.

    C.    **The ALJ properly gave "minimal weight" to the treating physician's opinion regarding Plaintiff's total disability and "greater weight" to the consultative neurologist's findings.**

Plaintiff contends the ALJ failed to give controlling wight to the opinion of treating physician Dr. Stephan who opined that Plaintiff was "totally disabled" and improperly gave "greater weight" to the opinion of consultative neurologist Dr. Jaffri. (Plaintiff's brief at 10, 11).

The Commissioner has the authority to regulate the nature, extent and manner of taking and furnishing evidence in order to establish the right to Social Security disability benefits. 42 U.S.C. § 405(a). In accordance with this authority, the claimant has the responsibility to furnish medical evidence proving her impairment. 20 C.F.R. §§ 404.1512(a), 416.912(a). Before a determination is made, the ALJ will develop claimant's complete medical history using "every reasonable effort". 20 C.F.R. Sections 404.1512(d), 416.912(d). If any of the evidence is inconsistent

with other evidence in the record, the ALJ must weigh all of the evidence contained in the record and decide if the evidence is adequate to make a disability determination. 20 C.F.R. Sections 404.1527(c), 416.927(c). When the ALJ decides the evidence is inadequate to make a disability determination, the ALJ will contact the treating physician for additional information if readily available from the treating physician's records. 20 C.F.R. Sections 404.1512(e), 416.912(e). If not readily available, the ALJ may obtain the additional information through the consultative examination of the claimant. 20 C.F.R. §§ 404.1512(f)416.912(f).

In addition, the Commissioner has chosen to give evidentiary weight to the opinion of treating physicians in disability cases. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must apply the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In this case, the ALJ gave "careful consideration of all the evidence" and found that the evidence presented was insufficient to support a finding of disability. (Tr. at 15) Therefore, I find the

ALJ had no obligation to recontact Plaintiff's treating physician. (Tr. at 15).

In addition, the ALJ did not address the opinion of Plaintiff's treating physician as required by the "treating physician rule" analysis. (Tr. at 21). However, omission of the "treating physician rule" analysis does not always require remand for further proceedings when the treating physician's opinion is inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004).

The ALJ properly gave minimal weight to the opinion of Dr. Stephan in his Sept. 24, 2004 report for the NYS Office of Temporary & Disability Assistance, which stated that Plaintiff is "totally disabled because of the MS and her treatment." (Tr. at 146). The ALJ must clearly state his reasoning when electing not to give a treating physician's opinion controlling weight. See Schaal, 134 F.3d at 506 (2d Cir. 1998). In this case, the ALJ stated that he discounted Dr. Stephan's opinion because it was inconsistent with "the range of activities the claimant reported or with the mild findings on examination." (Tr. at 21). Moreover, the ALJ further stated the objective medical evidence and the findings of other treating physicians did not support Dr. Stephan's opinion that Plaintiff was "totally disabled". (Tr. at 22).

The ALJ considered the evidence from Dr. Stephan, Dr. Patel, Dr. Jaffri, the DSS medical consultant, and Plaintiff's activities of daily living in giving minimal weight to Dr. Stephan's

determination of "total disability". Therefore, I find the ALJ properly rejected as controlling the opinion of the treating physician based on substantial evidence in the record.

In weighing the findings of Dr. Jaffri, the ALJ considered Dr. Jaffri's expertise as a neurologist, and the consistency of his findings with the objective findings of treating neurologist Dr. Patel. (Tr. at 22). Therefore, I find the ALJ properly gave greater weight to the findings of Dr. Jaffri.

## **Conclusion**

For the reasons set forth above, I conclude that the ALJ's decision is supported by substantial evidence in the record and, therefore, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                            s/Michael A. Telesca
                                            MICHAEL A. TELESCA
                                      United States District Judge

Dated: Rochester, New York
      October 23, 2009